UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

VPH PHARMACY, INC.                    Case No. 17-12701

    Debtor                             Honorable Victoria A. Roberts

_____/

**<u>ORDER DENYING APPELLANT'S BRIEF ON APPEAL [Doc. 5]</u>**

    The issue presented by this bankruptcy appeal is whether Appellant Creditor The Winrose Plus Group, LLC ("Winrose") was granted super-priority administrative expense claim, or a priming lien (a lien either senior or equal to existing liens), on Debtor VPH Pharmacy, Inc. ("VPH") assets when it extended post-bankruptcy credit to VPH. This Court uphold of the findings by the Bankruptcy Court that non priority status was granted to Winrose.

    VPH filed a petition for Chapter 11 bankruptcy on January 13, 2017. The same day, VPH filed a Financing Motion ("Motion") requesting authority to borrow $150,000 from Winrose. The Motion indicated that pursuant to Section 364(a)(1) of the Bankruptcy Code, the loan would be entitled to super-priority administrative expense claim status. The United States Bankruptcy Court for the Eastern of District of Michigan issued an order ("Financing Order") authorizing VPH to obtain this post-petition financing.

    Winrose argues that the Financing Order granted it super-priority status. The United States Trustee appointed the Unsecured Creditors' Committee ("Committee"),

1

which objected to the super-priority status urged by Winrose. The Bankruptcy Court sustained the Committee's objection, ruling that the Financing Order did not grant either a super-priority administrative claim, or a priming lien on VPH's assets. Winrose appealed to this Court.

The Bankruptcy Court's ruling is **AFFIRMED**.

I. Background

VPH is a closed-door pharmacy, meaning it services private entities including nursing homes and children's foster care facilities. In the three years prior to filing its petition for Chapter 11 bankruptcy, VPH averaged about $15 million per year in annual revenue. In 2016, VPH's revenue began to decline due to various factors, including the loss of customer contracts, and an investigation and subsequent seizure of assets by the Drug Enforcement Agency ("DEA"): the DEA seized funds on September 22, 2015 that were allegedly used or acquired as a result of a violation of the Controlled Substances Act. On September 7, 2016, a state court entered judgment against VPH in the amount of $1,278,310.55 after its current owner, Devenkumar C. Patel ("Patel") defaulted on payment for stock purchased from its former owner. After entry of the judgment, Patel gave his wife, Amee Patel ("Mrs. Patel") his power of attorney on December 2, 2016. Patel also began serving an eighteen month prison sentence in December, 2016.

The judgment against VPH had immediate effect. VPH's bank account was garnished. This affected VPH's cash flow and its ability to pay creditors. As a result, it sought protection from the Bankruptcy Court under Chapter 11.

After filing its Chapter 11 petition on January 13, 2017, VPH's suppliers cut off all credit and refused to ship medications to VPH. Without access to its bank account, VPH could not operate, and was in need of an emergency loan to meet its obligations and provide medications to its patients.

VPH's Chief Restructuring Officer ("CRO") attempted to obtain cash or credit for VPH, but could not. The CRO contacted Mrs. Patel for an emergency loan of $150,000. Mrs. Patel then formed Winrose as a limited liability company, and borrowed money from family in order to give the requested loan.

VPH filed its Motion, asking the Bankruptcy Court to authorize it to obtain post-petition financing and use cash collateral, pursuant to 11 U.S.C. § 364(a)(1), (c)(1), (c)(2), (c)(3), and (d)(1). The Motion indicated that Winrose, which was to loan VPH $150,000, was entitled to a super-priority administrative claim, and a priming lien on VPH's assets. The Bankruptcy Court entered various orders authorizing VPH to obtain interim post-petition financing and use cash collateral (collectively referred to as "Financing Order"). The Financing Order stated that Winrose had "a security interest in and liens on all of" VPH's assets, which served as collateral. [Designated Bankruptcy Record, Doc. 63, Pg. 5]. The Financing Order also stated "to the extent there is a conflict or inconsistencies between the Motion and this [Financing Order], the [Financing Order] shall control." *Id.* at 4.

A second revised version of the Financing Order permitted VPH to borrow an additional $150,000 from Winrose. VPH was informed that Winrose refused to fund the second $150,000. The Committee filed an objection, noting the bad faith actions of Winrose in refusing to fund the second $150,000 loan, and claiming that the Financing

3

Order did not grant Winrose either a super-priority administrative claim or a priming lien. The parties briefed the issue and the Bankruptcy Court held a hearing and issued an oral ruling.

In its ruling, the Bankruptcy Court acknowledged that the Motion states that Winrose would receive a super-priority administrative expense claim status. But the Financing Order did not grant such status. The Bankruptcy Court said that the Financing Order made clear that the terms of the Financing Order, not the Motion, control. Accordingly, the Bankruptcy Court sustained the Committee's objection.

VPH's Chapter 11 petition was later converted into a Chapter 7 petition. The Bankruptcy court entered a written order ("Order Sustaining the Objection") stating that the Committee's objection was sustained for the reasons set forth in the oral ruling, "Winrose was not granted either a super-priority administrative claim or a priming lien on [VPH's] assets." [Designated Bankruptcy Record, Doc. 332, Pg. 2].

On appeal, Winrose claims that the Bankruptcy Court's Order Sustaining the Objection must be reversed because: 1) the terms of the Motion are incorporated by reference into the Financing Order; and 2) any ambiguity in the Financing Order must be construed against VPH, the drafter. The Trustee claims that: 1) the Financing Order is clear on its face; and 2) any ambiguity in it should be construed against Winrose because Winrose stipulated to entry of the Financing Order.

II. Legal Standard

    A. District Court's Appellate Jurisdiction over Bankruptcy Matters

The Court has appellate jurisdiction over this matter. 28. U.S.C. § 158. The standard of review on appeal is determined by the nature of the action taken below by the Bankruptcy Court. *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993). "[T]he Court applies the clearly erroneous standard of review to the bankruptcy court's factual findings and reviews *de novo* the bankruptcy court's legal conclusions*." Five Star Laser, Inc v. Height (In re Height)*, 2011 U.S. Dist. LEXIS 42237, *6 (E.D. Mich. Apr. 19, 2011) (citing *Stamper v. United States* (*In re Gardner*), 360 F.3d 551, 557 (6th Cir. 2004)). A bankruptcy court's determinations which involve an application of the Bankruptcy Code are also subject to *de novo* review. *CAMOFI Master LDC v. Spradlin*, 2017 U.S. Dist. LEXIS 165815 (E.D. Ky. Oct. 6, 2017). "Where a bankruptcy court interprets its own prior orders and acts, it is subject only to review for a clear abuse of discretion." *Id.* (internal citations and quotations omitted). Such an interpretation is reviewed on appeal with full deference. *In re Terex Corp.*, 984 F.2d at 172.

    B. Applicable Bankruptcy Law

Section 364 of the Bankruptcy Code, entitled "Obtaining credit," creates a framework for a debtor to incur debt and obtain credit after it has filed a Chapter 11 bankruptcy petition. *In re Mayco Plastics, Inc.*, 379 B.R. 691, 697, (Bkrtcy. E.D. Mich. Jan. 4, 2008). Section 364(a) permits a trustee or debtor, who is authorized to operate the debtor's business, to incur unsecured debt and obtain unsecured credit in the ordinary course of business without first obtaining a court order. *Id.* This section also

5

addresses the priority given to post-petition unsecured debt or credit; it is allowed under Section 503(b)(1) as an administrative expense. *Id.*

Section 364(b) permits a court to authorize a debtor to incur unsecured debt other than in the ordinary course of business. *Id.* Such a debtor is also permitted to have an administrative expense claim under Section 503(b)(1), but there must first be a notice and hearing. *Id.* In summary, if the unsecured debt is incurred in the ordinary course of business, Section 364(a) automatically grants an administrative expense claim. If, however, the debt is not incurred during the ordinary course of business, there must first be a hearing allowing the debt to be incurred as an administrative expense claim. *Id.*

However, lenders may desire more protections that just the allowance of an administrative expense claim. *Id.* at 698. "In those circumstances, [Sections 364(c)] and (d) provide the [c]ourt with authority to permit the Chapter 11 debtor to offer additional benefits to induce a party to make a loan or extend credit." *Id.* As the Sixth Circuit describes, Sections 364(c) and (d) "provide[] certain incentives that a trustee or debtor in possession may offer, with court approval, to induce potential lenders to undertake the risks involved in providing post-petition financing to a bankruptcy estate." *Tully Constr. Co. v. Cannonsburg Envtl. Assocs. (In re Cannonsburg Envtl. Assocs.)*, 72 F.3d 1260, 1267 (6th Cir. 1996). (internal citations and quotations omitted). The *In re Cannonsburg Envtl. Assocs.* court continues:

> "These incentives include granting the lender … an administrative expense priority under [Section] 364(b), a super-priority claim under [Section] 364(c)(1), or a lien on unencumbered estate assets under §

6

> 364(c)(2) or (3), on account of the *post-petition* credit extended.
> Furthermore, [S]ection 364(d) provides that, under appropriate
> circumstances and after notice and a hearing, the court may authorize
> the obtaining of credit secured by a lien on encumbered property that
> is senior or equal to any existing lien on the property."

*Id* (internal citations and quotations omitted).

The priority over administrative expense claims granted under Section 364(c)(1) is known as a "super-priority" claim. *In re Mayco Plastics, Inc.*, 379 B.R. at 701-02. The secured lien that is senior or equal to any existing lien, granted under Section 364(d), is known as a "priming lien." *Id.* at 698.

### III. Analysis

Winrose says that the Court should conduct a *de novo* review of the Bankruptcy Court's Order Sustaining the Objection because the order was based on law alone. However, in making its ruling on the Committee's objection, the Bankruptcy Court did not apply the Bankruptcy Code to modify the Financing Order. Instead, the Bankruptcy Court looked to the language of the Financing Order itself to determine what priority status was granted to Winrose. Given that the Bankruptcy Court merely interpreted the Financing Order in light of the Committee's objections, and did not modify it, the Court reviews the Bankruptcy Court decision under the less stringent abuse of discretion standard. *Official Comm. of Unsecured Creditors v. Dow Chem. Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 675-676, (6th Cir. 2006) (reviewing on appeal a bankruptcy court's opinion for abuse of discretion, where the bankruptcy court did not

7

intend to modify the terms of a previous decision, but only interpreted it in light of a group of creditors' objections).

A. Winrose Was Not Granted a Super-Priority Administrative Claim Or a Priming Lien

Winrose makes several arguments as to why the Financing Order granted it a super-priority administrative claim and a priming lien. Most credibly, Winrose claims that there is no conflict between the Motion and the Financing Order. It says the terms of the Motion are incorporated by reference into the Financing Order, but it does not point to any part of the Financing Order that does incorporate the terms of the motion.

The Trustee argues that there is no language that Winrose can point to in the Financing Order that grants it either a super-priority administrative claim or a priming lien. The only grant of any kind, says the Trustee, is the Financing Order's language granting a "security interest in and liens on all" of VPH's assets. [Designated Bankruptcy Record, Doc. 63, Pg. 5].

"[A] reasonable interpretation by the bankruptcy court of its own order should stand." *In re Height*, 2011 U.S. Dist. LEXIS 42237, *10. "[T]he bankruptcy judge who has presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings." *Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294, 1300 (11th Cir. 2005).

Bankruptcy Judge Daniel S. Opperman authored the Financing Order, orally ruled on the Committee's objection, and authored the Order Sustaining the Objection. If the terms of the Financial Order needed clarification, he would have been in the best

8

position to do so. Judge Opperman plainly said that while the Financing Order's findings of fact state that the Motion grants Winrose super-priority administrative claim status, the Financing Order language itself does not do that. Instead, the Bankruptcy Court said, the terms of the Financing Order only granted Winrose a security interest in and a lien on all collateral assets.

The Bankruptcy Court also ruled that the terms of the Financing Order make clear that it, not the Motion, control. Ultimately, the Bankruptcy Court sustained the Committee's objection to Winrose's lack of super-priority status.

Because the Bankruptcy Court reasonably looked at the language of the Financing Order to rule on the Committee's objections, it did not abuse its discretion. *See E. Coast Miner, LLC v. Nixon Peabody, LLP*, 2017 U.S. Dist. LEXIS 163237, *11-13 (E.D. Ky. Oct. 3, 2017) (holding that a bankruptcy judge, who reasonably looked at the text and terms of a cash collateral order, did not abuse her discretion). Accordingly, the Court defers to the Bankruptcy Court's interpretation of its own Financing Order. *In re Optical Techs., Inc.*, 425 F.3d at 1300.

Winrose additionally argues that to the extent the Financing Order does not grant it priority rights, it conflicts with Bankruptcy Court's oral opinion. This argument fails. "[T]he Court speaks through its written orders and judgments, not its opinions and oral pronouncements." *Abner v. County of Saginaw County*, 2007 U.S. Dist. LEXIS 92594, *11 (E.D. Mich. Nov. 28, 2007). Accordingly, "the Court must examine the text of the [order] itself to ascertain" the priority level granted to Winrose. *Lipan v. Kriegish (In re Kriegish)*, 2002 U.S. Dist. LEXIS 11245, * 8 (Bkrtcy. E.D. Mich. Jun. 25, 2002).

The Trustee argues that Winrose waived the super-priority administrative claim at a May 3, 2017 hearing, and should be precluded from raising the issue on appeal. The Trustee cites to portions of the hearing transcript in support of this argument. However, because the hearing transcript was not made available for the record on appeal, the Court cannot analyze the cited language in its full context. Further, at the May 8 hearing on the Committee's objection – and the transcript is in the record – the Bankruptcy Court acknowledges the Motion's language that grants Winrose a super-priority administrative status; but then rules that the language of the Financing Order controls. Additionally, the Bankruptcy Court's August 3 order sustaining the Committee's objection specifically says that Winrose was not granted either a super-priority administrative claim or a priming lien. Thus, it appears that the Bankruptcy Court did not believe that the super-priority issue was waived. Thus, this argument also fails.

Neither of these additional arguments has bearing on the Court's finding that the Bankruptcy Court did not abuse its discretion when it reasonably interpreted the language of the Financing Order to mean that Winrose had neither a super-priority administrative claim nor a priming lien on VPH's assets.

B. There Is No Ambiguity in the Financing Order

Winrose does not directly argue that the Financing Order is ambiguous. Instead, it claims there would have been no need for the Court to say "to the extent there is a conflict or inconsistencies between the Motion and this [Financing Order], the [Financing Order] shall control," if the language in the Motion had no meaning. [Designated Bankruptcy Record, Doc. 63, Pg. 5]. Winrose argues that the parties intended the

10

Motion to set forth the understanding of the parties. According to Winrose, any ambiguities should be construed against, VPH, which drafted the Financing Order.

The Trustee disagrees that there is ambiguity in the Financing Order, but says that to the extent there is, any ambiguity should be construed against Winrose because it stipulated to the entry of the Financing Order. The Trustee claims that Winrose could have clarified any purported ambiguity in the Financing Order, but elected not to by stipulating to its entry.

The terms of the Financing Order are clear. It states that its terms, not the terms of the Motion, control. This statement has just one interpretation, rendering any ambiguity argument unavailing

IV. Conclusion

Winrose makes several arguments that are incoherent and irrelevant; and, it incorrectly characterizes the Financing Order's language.

Because the Bankruptcy Court did not abuse its discretion when it interpreted the terms of the Financing Order, its ruling that Winrose was not granted either a super-priority administrative claim or a priming lien on VPH's assets is **AFFIRMED**.

**IT IS ORDERED**.

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: January 9, 2018